In re MOLTEN METAL TECHNOLO-GY, INC., MMT of Tennessee, Inc., MMT Federal Holdings, Inc., M4 Environmental Management, Inc., M4 Environmental L.P., Debtors.

Stephen S. Gray, as he is Chapter 11 Trustee of Molten Metal Technology, Inc., Plaintiff,

v.

Executive Risk Indemnity, Inc., National Union Fire Insurance of Pittsburgh, Genesis Insurance Company, Lloyds and Companies Syndicates Nos. 1212, 1007, 484, 376, 2376, 435, 205, 623, 1047, 1173, 1215, 47, and 839, and CNA Reinsurance Company, Ltd., Defendants.

Bankruptcy Nos. 97–21385–CJK to 97–21389–CJK. Adversary No. 00–1386.

United States Bankruptcy Court, D. Massachusetts.

Jan. 3, 2002.

712

Thomas G. Hoffman, Michael Tabb, Boston, MA, for trustee.

John V. Snellings, Mary E. Borja, Miami, FL, for Genesis Insurance Company.

James M. Liston, Boston, MA, Nancy K. Tordai, Barrington, IL, for Lloyds and Companies Syndicates Nos. 839, 376 and 2376 (collectively, the Second Excess Insurer).

John R. Callahan, Boston, MA, for National Union Fire Insurance Company of Pittsburgh.

George A. Berman, Boston, MA, Ellen B. Van Vechten, Chicago, IL, for Lloyds and Companies Syndicates Nos. 1212, 1007, 484, 376, 2376, 435, 205, 623, 1047, 1173, 1215 and 47, and CNA Reinsurance Company, Ltd. (collectively, the First Excess Insurer).

## PROPOSED CONCLUSIONS OF LAW ON TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE PREPETITION "INSURED VS. INSURED" EXCEPTION

CAROL J. KENNER, Bankruptcy Judge.

The central issue presented by the present motion of the Chapter 11 Trustee for partial summary judgement is whether he is a different entity from the Chapter 11 Debtor for purposes of the "insured-versus-insured" exclusion in certain insurance policies covering claims against the Debtor's officers and directors. Acting in various combinations, most of the defendants—that is, all but Executive Risk Indemnity, Inc., which group shall constitute the "Prepetition Insurers"—issued a total of four liability insurance policies to Debt- or Molten Metal Technology, Inc. (the "Debtor" or "MMT") to cover wrongful acts of MMT and its officers and directors, committed between January 1997 and January 1998.[1] Stephen S. Gray, as he is Chapter 11 Trustee of Molten Metal Technology, Inc. (the "Trustee"), has asserted prepetition claims of the Debtor against certain of the Debtor's officers and directors and has sought assurance from the Prepetition Insurers that the claims are covered by the policies. The Prepetition Insurers have declined to provide coverage on the basis (among others) that coverage of such claims is excluded by an "insured versus insured" exclusion, contained in each of the four policies, which excludes from coverage claims brought "by any Insured or by the Company [Molten Metal Technology, Inc.]." By Count II of his complaint in this adversary proceeding, the Trustee seeks a declaration that the Prepetition Insurers cannot, on the basis of the insured-versus-insured exclusion, decline to provide coverage. The Trustee now moves for summary judgment against the Second and Third Excess Insurers as to Count II, and the Insurers oppose the motion. Lacking authority to enter final judgment on Count II, this Court now, pursuant to 28 U.S.C. § 157(c)(1) and F.R.BANKR.P. 9033(a), enters the following *proposed* conclusions of law, proposing that a declaration enter as the Trustee requests.

### JURISDICTION

The Court must first determine the nature of its jurisdiction over Count II.[2] The Trustee maintains that Count II is a core proceeding, such that the Bankruptcy

---

1. Defendant Executive Risk Indemnity, Inc., insured the Debtor only postpetition and has no interest in the present motion or in the count to which it pertains.

2. 28 U.S.C. § 157(b)(3) ("The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11.").

Court has jurisdiction to determine and enter final judgment on the matter. See 28 U.S.C. § 157(b)(1). Both Genesis and Lloyds deny that this is a core proceeding, and neither consents to entry of final judgment in the matter by the Bankruptcy Court. Lloyds further contends that the bankruptcy court lacks subject matter jurisdiction over this action.

■■■■ The statute that defines the powers of the bankruptcy court, 28 U.S.C. § 157, lists various core proceedings, see § 157(b)(2), but the list is not exclusive, and the statute does not otherwise define "core." The word "core" is used in § 157(b)(1) to denote those proceedings as to which a bankruptcy judge may, without consent of the parties, enter final orders and judgment. Therefore, to qualify as core, a proceeding must at least be so integral to the bankruptcy process that Congress has the power under Article I of the Constitution to authorize a specialized, non-Article III judge to render a final decision of its merits. Accordingly, under the guiding precedent in this Circuit, a proceeding is "core" under § 157(b) only if it is integral to the basic function of the bankruptcy court and historically has been entrusted to the bankruptcy court, not reserved exclusively for Article III courts.[3]

■■■■ The count now in controversy—for a declaration that prepetition claims of the Debtor "Company," when asserted by the Chapter 11 Trustee, are not claims "by the Company" within the meaning of the insured-versus-insured exclusion in the debtor's prepetition insurance policies—is not integral to the bankruptcy process. It relates to this bankruptcy case only as a proceeding ancillary to the liquidation of prepetition claims of the debtor. It will affect the amount of funds available for distribution in the case but will not otherwise affect the case or the Debtors' relations with their creditors. It does not arise under the Bankruptcy Code but under prepetition insurance policies and the state law that governs their interpretation. Actions of this type need not and usually do not arise in bankruptcy; rather, they usually arise in conjunction with state court tort and business litigation. I conclude that Count II is functionally indistinguishable from the prepetition contract action that, in *Marathon*, the Supreme Court held that a federal bankruptcy judge, for want of Article III status, lacked the constitutional power to adjudicate. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Accordingly, Count II, though clearly "related to" this bankruptcy case within the meaning of § 157(a) and (c)(1),[4] is not a core proceed-

---

3. *In re Arnold Print Works, Inc.*, 815 F.2d 165, 169 (1st Cir.1987) (action on postpetition contract is deemed a core proceeding because, although it arises under state law, it is integral to the basic function of the bankruptcy court and is of a kind that historically has been subject to resolution in the bankruptcy court). See also *Matter of Wood*, 825 F.2d 90, 97 (5th Cir.1987) (proceeding is core only "if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case"); *Beard v. Braunstein*, 914 F.2d 434, 444 (3d Cir.1990) (same); and *In re Gardner*, 913 F.2d 1515, 1518 (10th Cir.1990) ("Actions which do not depend on the bankruptcy

laws for their existence and which could proceed in another court are not core proceedings.").

4. Under the widely accepted test, a proceeding is "related to" a bankruptcy case within the meaning of 28 U.S.C. § 1334 and 157, the bankruptcy jurisdiction statutes, if its outcome "could conceivably have any effect on the estate being administered in bankruptcy." *In re Hall's Motor Transit Co.*, 889 F.2d 520 (3rd Cir.1989), citing *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir.1984) (interpreting the phrase as it appeared in (now repealed) 28 U.S.C. § 1471(b)).

ing. Lacking the defendants' consent, this Court may not finally adjudicate the matter. In accordance with § 157(c)(1), this Court may and shall instead hear the matter and submit proposed conclusions of law [5] to the district court for entry of final judgment thereon, after consideration and review *de novo* of those matters to which the parties timely and specifically object.[6]

### PROCEDURAL HISTORY

On December 3, 1997, the above-captioned Debtors filed petitions under Chapter 11 of the Bankruptcy Code.[7] The Debtors remained debtors-in-possession until August 1998, when their postpetition lender moved for appointment of a chapter 11 trustee. On August 21, 1998, the Court allowed the motion and directed the United States Trustee to appoint a chapter 11 trustee. The United States Trustee appointed Stephen Gray to serve as chapter 11 trustee in these five cases, and, on August 24, 1998, the Court allowed the United States Trustee's application to approve that appointment. Mr. Gray continues to serve as chapter 11 trustee in these cases.

On December 2, 1999, Mr. Gray, as chapter 11 trustee in these cases, commenced in this Court an adversary proceeding (*Gray v. Haney et al.*, No. 99–1653) against nine individuals,[8] all of whom he alleges are former officers and directors of Debtor Molten Metal Technology, Inc. The complaint (styled "Objection to Claims and Trustee's Counterclaims") objects to the defendants' claims against the estate (mostly claims for indemnification) and asserts against them numerous counterclaims for damages for alleged wrongful acts: breach of fiduciary duty, breach of duty of loyalty, corporate waste, insider trading, and gross negligence. The adversary proceeding against the officers and directors (hereinafter, the "O & D Proceeding") is currently stayed pending resolution of certain issues regarding insurance coverage for these claims.

Hence the present adversary proceeding, which the Trustee commenced on August 9, 2000, against the insurers identified below (and one other not involved in Count II). In relevant part, his complaint alleges as follows: In January 1997, in consideration of a premium on each policy, the Debtor obtained four policies of insurance for the liability of its officers and directors and of the company itself, providing total coverage of $20 million.

1. National Union Fire Insurance of Pittsburgh ("National Insurance" or the "Primary Insurer") issued and delivered to MMT a written contract of insurance entitled "Directors, Officers and Corporate Liability Insurance Policy" (the "Primary Policy"),

---

5. Section 157(c)(1) requires "proposed findings of fact and conclusions of law," but the resolution of a motion for summary judgment involves no findings of fact, only rulings of law. The Court will make a ruling of law that certain facts are uncontroverted and therefore deemed established, will recite the facts so established, and, if appropriate, will rule that there is no genuine issue as to any material fact, but the Court will make no "findings" of fact. Therefore, this Court will submit only proposed conclusions of law, not proposed findings of fact.

6. See 28 U.S.C. § 157(c)(1) (bankruptcy court may hear non-core proceeding that is otherwise related to a bankruptcy case and shall enter proposed findings of fact and conclusions of law) and F.R.BANKR.P. 9033 (requiring specific objections within ten days of service).

7. Their cases have been jointly administered but not substantively consolidated.

8. They are William Haney, Peter A. Lewis, Ethan Jacks, Ian Yates, Victor E. Gatto, Benjamin T. Down, Maurice F. Strong, Christopher J. Nagel, and John T. Preston.

covering the period from January 19, 1997, through January 19, 1998, with a limit of coverage of $5 million.

2. Lloyds and Companies Syndicates Nos. 1212, 1007, 484, 376, 2376, 435, 205, 623, 1047, 1173, 1215, and 47, and CNA Reinsurance Company, Ltd. (collectively, the "First Excess Insurer"), issued and delivered to MMT a written contract of insurance (the "First Excess Policy") entitled "Excess Directors and Officers and Company Reimbursement Indemnity," bearing policy number 542F01227D97, covering the same period as the Primary Policy, with limits of coverage of $5 million in excess of the Primary Policy.

3. Lloyds and Companies Syndicates Nos. 839, 376, and 2376 (collectively, the "Second Excess Insurer") issued and delivered to MMT a written contract of insurance (the "Second Excess Policy") entitled "Excess Directors and Officers and Company Reimbursement Indemnity," bearing policy number 542F01230D97, covering the same period as the Primary Policy, with limits of coverage of $5 million in excess of the Primary and First Excess Policies.

4. Genesis Insurance Company ("Genesis" or the "Third Excess Insurer") issued and delivered to MMT a written contract of insurance (the "Third Excess Policy") entitled "Directors and Officers Liability Insurance Policy," covering the same period as the Primary Policy, with limits of coverage of $5 million in excess of the

Primary and First and Second Excess Policies.

In the O & D Proceeding, the Trustee has asserted claims against former officers and directors of the Debtor, and such claims are based on acts committed by such officers and directors during the periods of the four above policies. Nonetheless, he asserts, each of the insurers has wrongfully declined coverage of the Trustee's claims, in part on the basis of the insured-versus-insured exclusion in the Primary Policy. That exclusion does not apply to claims by the Trustee. Therefore, there exists an actual controversy between the insurers and the Trustee regarding the insurers' indemnification obligations, requiring, as the Trustee requests in Count II, that the Court issue a declaration that the Primary and Excess Insurers are obligated to indemnify the officers and directors for their liability on the Trustee's claims against them. In his motion for partial summary judgment, the Trustee makes clear that, by Court II, he seeks only a more restricted declaration, phrased in the negative: that the insurers may not decline to provide coverage on the basis of the insured-versus-insured exclusion. For purposes of this motion (at least), the Court construes Count II as requesting only this more restricted declaration.

Each of the Prepetition Insurers has filed an answer in which it opposes Count II. Since then, however, all parties to this adversary proceeding have stipulated to dismissal without prejudice of the Trustee's complaint as it relates to the Primary Insurer and the First Excess Insurer,[9] such that only the Second Excess Insurer

---

9. In his request for a hearing on the present motion, the Trustee reported that the Primary and First Excess Policies would be exhausted after consummation of settlements to which the Trustee was a party. The Court understands that the parties' execution of the stipulation of dismissal was done pursuant to the settlements and that the settlements have now been consummated. The Court further understands that, in accordance with the same settlements, some but not all of the coverage afforded by the Second Excess Policy has also been exhausted.

("Lloyds") and Third Excess Insurer ("Genesis") continue to have an interest in Count II and this motion.

After the filing of the complaint and answers in this adversary proceeding, each defendant filed a separate motion under 28 U.S.C. § 157(d), asking the United States District Court to withdraw this proceeding from the Bankruptcy Court to the District Court. On December 15, 2000, the District Court (Zobel, J.) denied the motions filed by Lloyds and Genesis but further ordered (on such motions) that, "[f]or those claims in which the parties may be entitled to a jury trial, pursuant to the local bankruptcy rules, the Bankruptcy Court will conduct the pretrial proceedings and thereafter will transfer any remaining claims to this Court for trial." [10]

The Trustee then filed the present motion for partial summary judgment, and Lloyds and Genesis have opposed the motion.[11] In support of his motion, the Trustee filed a separate statement of undisputed facts, as required by MLBR 7056–1 and District Court Local Rule 56.1 (D.Mass.), and Lloyds and Genesis have filed responses thereto. The Trustee has also filed the affidavit of his counsel, Thomas Hoffman. In support of its opposition to the motion, Genesis filed the declaration of N. Christopher Hardee and moved for leave to file certain supplemental exhibits. Over the Trustee's objection on the basis of relevance, the Court has allowed the motion, thereby accepting the supplemental exhibits (but without ruling on their relevance or materiality). Genesis also moved under Rule F.R.Civ.P. 56(f) for ad-

ditional time to develop discovery in the matter; the Court granted Genesis until June 29, 2001, to continue discovery and file a further response. On June 29, 2001, Genesis filed a supplemental opposition and, in support thereof, the declaration of Mary Borja.[12] Lloyds, too, filed a supplemental opposition and, in support thereof, the deposition testimony of Ethan E. Jacks and Elliott J. Mark.[13] The Trustee has filed a reply to Genesis's supplemental opposition and, in support of the reply, the affidavit of Michael Tabb. The Court held a hearing on the motion on July 10, 2001.

### SUMMARY JUDGMENT AND BURDEN OF PROOF

A party is entitled to summary judgment only upon a showing that there is no genuine issue of material fact and that, on the uncontroverted facts, the movant is entitled to judgment as a matter of law. F.R.Civ.P. 56(c). The Insurers have denied coverage on the basis of an exclusion. Insofar as they rely on the exclusion as the basis for denying coverage, they bear the burden of proving that the exclusion applies. Where, as here, the party moving for summary judgment would not bear the burden of proof at trial, its initial burden is to demonstrate or point out a lack of evidence to support at least one essential element of the opposing party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If it does so, the burden then shifts to the opposing party to adduce such evidence on each of the disputed elements as at trial would be sufficient to withstand a motion for directed verdict. *Anderson v. Liberty*

---

**10.** The motions by the other defendants for withdrawal to the District Court have not been acted on. Those by the Primary and First Excess Insurers appear now to be moot.

**11.** The Primary and First Excess Insurers also filed oppositions, but these were rendered moot by the Stipulation of Dismissal.

**12.** The declaration was filed as an attachment to Genesis's Supplemental Memorandum.

**13.** The transcripts of this testimony are attached to Lloyds Supplemental Opposition to the Trustee's Motion for Summary Judgment.

*Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must construe the evidence adduced in the light most favorable to the nonmoving party, drawing all possible inferences in that party's favor. *In re Varrasso,* 37 F.3d 760, 763 (1st Cir.1994) (all reasonable inferences from the facts must be drawn in the manner most favorable to the nonmovant; summary judgment is inappropriate if inferences necessary for the judgment are not mandated by the record). Summary judgment will enter for the movant if the party bearing the burden of proof fails to establish the existence of an element essential to its case. *Celotex Corp. v. Catrett,* 477 U.S. at 322–23, 106 S.Ct. 2548; *In re Varrasso,* 37 F.3d at 763 n. 1.

## FACTS

### 1. *Uncontroverted Facts*

The following facts are uncontroverted.

In January 1997, in consideration of a premium on each policy, MMT obtained the four policies of insurance identified in the Trustee's complaint (the Primary and three Excess Policies, as described above) for the liability of its officers and directors

and of MMT itself, providing total coverage of $20 million. The Primary Policy covers "the Loss of each and every Director or Officer of the Company [MMT] . . . for any actual or alleged Wrongful Act in their respective capacities as Directors or Officers of the Company." However, this coverage is subject to exclusion (i), an "insured versus insured" exclusion, set forth at paragraph 4(i) of the Primary Policy, as amended by three endorsements. In relevant part, exclusion (i), as amended by Endorsement No. 9 to the Primary Policy, states:

> The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured:
>
> (i) which is brought by any Insured or by the Company; or which are [sic] brought by any security holder of the Company, whether directly or derivatively, unless such Claim(s) is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Insured or the Company.[14]

---

**14.** In the Policy itself, exclusion (i), in relevant part, states:

> (i) which is brought by any Insured or by the Company; or which is brought by any security holder of the Company, whether directly or derivatively, unless such security holder's Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Insured or the Company.

Endorsement # 9 deletes exclusion (i) but replaces it with language that, in relevant part, is almost identical; it also adds special language (not relevant here) for certain cross-claims and third-party claims for contribution or indemnity.

The exclusion set forth at ¶ 4(i) is also amended by Endorsements # 3 and # 10. Endorsement # 3 amends the exclusion solely for purposes of additional coverage the endorsement grants for Employment Practices

Claims; none of the claims for which the Trustee seeks to establish coverage is an Employment Practices Claim, so Endorsement # 3 is inapplicable here.

Endorsement # 10 amends the exclusion by adding, at the end thereof, a proviso: "Provided, further, that this exclusion shall not apply to any Claim brought by or against an Insured as defined in definition (e)(3)." Definition (e)(3), itself added by Endorsement # 10, states that, for purposes of Securities Claims only, the definition of Insured shall include "any past, present, or future employee of the Company (other than one who is already an insured by virtue of subparagraph (1) of the definition (e))." The Trustee has not invoked its proviso as a means of circumventing the insured vs. insured exclusion. No party has articulated a position on the relevance of this endorsement or even brought it to the attention of the Court.

The Primary Policy defines "Insured" to mean "any past, present or future duly elected or appointed directors or officers of the Company" or, "with respect to Coverage B(i) [for loss to the Company arising from a Securities Claim first made against the Company] only, the Company." The "Company" is defined as "the Named Corporation designated in Item 1 of the Declarations and any Subsidiary thereof." The "Named Corporation" is "Molten Metal Technology, Inc."

The Second and Third Excess Policies contain "follow form" language pursuant to which, except with respect to premium, amount of coverage, and certain other matters, coverage under such policies is generally subject to the insuring terms, conditions, and exclusions of the Primary Policy.[15] The parties agree that, by virtue of the follow form language, coverage under the Excess Policies is subject to the insured-versus-insured exclusion in the Primary Policy.

On December 3, 1997, MMT and four affiliates filed petitions under Chapter 11 of the Bankruptcy Code.[16] In August 1998, when their reorganization efforts failed, the Court ordered the appointment of a Chapter 11 Trustee, and Stephen Gray has served in that capacity ever since. On December 2, 1999, Mr. Gray, as chapter 11 trustee in these cases, commenced in this Court an adversary proceeding (*Gray v. Haney et al.*, No. 99–1653) against nine former officers and directors of MMT. The complaint (styled "Objection to Claims and Trustee's Counterclaims") objects to the officers' and directors' claims against the estate (mostly claims for indemnification) and asserts numerous counterclaims for damages for alleged wrongful acts: breach of fiduciary duty, breach of duty of loyalty, corporate waste, insider trading, and gross negligence. According to the complaint, most of the claims that the Trustee is asserting against the officers and directors accrued in favor of MMT before these bankruptcy cases were commenced. The defendants in the *Haney* action made demand on the Primary and Excess Insurers to cover the claims brought by the Trustee in that action. The Insurers declined to provide the requested coverage, citing as justification the insured-versus-insured exclusion in the Primary Policy.

### 2. *Other Facts*

The Insurers have submitted evidence in response to the Trustee's motion. By virtue of this evidence and of the requirement that it be construed in the light most favorable to the nonmoving parties, the following facts must be deemed established for purposes of this motion.

a. In procuring the policies at issue, MMT used the services of an insurance broker whom MMT viewed as having considerable expertise in the area of directors and officers coverage. The broker made recommendations to MMT regarding policy wording and terms that would best meet MMT's needs; and it negotiated policy terms on behalf of MMT.

b. In addition to the broker, MMT's general counsel, Ethan Jacks, its assistant general counsel, Elliot Mark, and its outside counsel, Sabin Willett, were involved in the negotiation of the D & O policies.[17]

---

**15.** See Section I (on p. 4) of the Second Excess Policy and the Follow Form Endorsement of the Third Excess Policy.

**16.** Their cases have been jointly administered but not substantively consolidated.

**17.** Sabin Willett himself denies, or at least does not recall, that he had any role in negotiating the policies or in advising MMT about the terms of the policies during their negotiation and procurement, but, for purposes of

c. National Union, the Primary Insurer, issued a D & O policy to MMT for policy years 1995–1996, 1996–1997, and the year at issue, 1997–1998, and terms of the National Union policy were negotiated each year. The 1996–1997 policy was modified from the previous year's policy to add entity coverage. The terms of the 1997–1998 policy were negotiated by MMT's broker; MMT's outside counsel, Sabin Willett, was also involved in the negotiation.

d. The D & O policies that National Union issued to MMT for 1995–1996 and 1996–1997 did not contain endorsements amending the insured-versus-insured exclusion, but other endorsements were negotiated for the 1995–1996 policy. In the National Union policy for 1997–1998, the insured-versus-insured exclusion was amended by endorsement 9, which added an exception for certain cross-claims and counterclaims.

e. In 1997, Willett represented MMT and various of its officers and directors, and advised the group about its rights under four insurance policies.

f. In September, 1999, Sabin Willett met with attorneys Alan Braunstein and Thomas Hoffman, both counsel to the Chapter 11 Trustee, and advised them that, in his opinion, the Chapter 11 Trustee was not a different entity from MMT for purposes of the insured-versus-insured exclusion, such that the prepetition policies (the Primary and Excess Policies at issue here) did not apply to the Trustee's claims against the officers and directors.

g. In the O & D action, the Trustee served a document subpoena on

MMT's former attorney, the firm of Latham & Watkins. Upon request of defendant William Haney, who was asserting the joint-defense privilege as to documents the firm's possession, the firm withheld certain subpoenaed documents, and Haney requested a protective order against production of the documents. In his response to the motion for protective order, the Trustee stated, among other things, that (1) "the Trustee, as the current management of MMT, stands in MMT's shoes in nearly every respect," and (2) "In this case, Haney's privilege is unavailing as against the Trustee, who is the successor-in-interest to MMT.... Because the Trustee, as MMT's successor-in-interest, is now suing Haney, his claim of joint defense privilege must be rejected." The Court denied Haney's motion for protective order.

## ARGUMENTS OF THE PARTIES

### 1. The Trustee

The Trustee's argument for summary judgment is as follows. Under the law governing the construction of insurance contracts, ambiguities in insurance policies, and especially in policy exclusions, must be resolved against the insurer that drafted the policy and in favor of the insured; exclusions must be construed strictly and literally, without poetic license. If the policy permits two rational interpretations, the insured is entitled to the benefit of the one most favorable to it. The language at issue excludes claims brought by "any Insured or by the Company." The Trustee's claims are not within the scope of this language because under no literal or unambiguous meaning of the defined terms

this motion, I must construe the evidence in the light most favorable to the Insureds.

"Insured" and "Company" does the Trustee qualify as either. To prevail, the Insurers would have to stretch the meaning of these terms to include an entity to whom they do not clearly or unambiguously apply, and this the rules of construction do not permit. Moreover, the exclusion uses the words "claims brought by," not "claims brought on behalf of," and thus focuses on the person or entity bringing the claim, not the nature or ownership of the claim being brought. Therefore, the claims at issue do not come within the exclusion by virtue of the fact that they arose from injuries to the Debtor or that the Trustee, in bringing those claims, is deemed "to stand in the shoes of" the Debtor. It matters only that the claims are being brought by the Trustee, not by the Debtor. The phrase "claims brought by" does not clearly and unambiguously include "claims brought on behalf of," "claims of," or "claims originating in favor of"; therefore, the rules of construction require that it not be construed to include those meanings.

The Trustee further argues that case law has overwhelmingly held that insured-versus-insured exclusions do not extend to trustees in bankruptcy, in part because the purpose of such exclusions is to protect insurers from collusive suits, of which there is no danger in claims brought by a bankruptcy trustee. The Trustee adds that, in view of the fact that many of these decisions were rendered against National Union Fire Insurance Company, the Primary Insurer, in the mid–1980s, the failure of National Union in this 1997 Primary Policy to explicitly exclude claims brought by a bankruptcy trustee or, more broadly, by any legal successor in interest to the Company, is evidence that no such exclusion was intended.

### 2. Lloyds and Genesis

In response, Lloyds and Genesis, the Second and Third Excess Insurers, make the following arguments. First, Lloyds argues that, as a matter of bankruptcy law, the Trustee is the Debtor Company for purposes of asserting the claims at issue here. Having arisen from injury to the Debtor, the claims are the Debtor's and became property of the bankruptcy estate only by virtue of the bankruptcy filing. In asserting the claims, the Trustee is a successor to the Debtor's causes of action, and he steps into the Debtor's shoes for purposes of maintaining such causes of action. This means that he has no greater rights than the Debtor had and is subject to the same defenses as the Debtor would have faced. By virtue of this law, the policy is not ambiguous, the Trustee is the Debtor Company for the purpose of these claims, and therefore the policy clearly excludes coverage.

Second, Genesis makes a slightly different argument: not that "Company" must be construed to include the Trustee, but that, as a matter of law, the Trustee is subject to any defenses that could have been asserted against the Debtor. So, regardless of whether, as a matter of contractual interpretation, Company includes the Trustee, the Trustee cannot bring the action because the Debtor clearly could not have brought it. The Trustee has no greater rights than the Debtor, and nothing in bankruptcy law strips the exclusion from the policy. Moreover, the Trustee is judicially estopped from denying that, for purposes of the claims asserted in the *Haney* action, he stands in the shoes of the Debtor: the Trustee expressly argued in the *Haney* suit that he stood in MMT's shoes, and was the successor in interest to MMT, for purposes of opposing one defendant's invocation of the joint defense privilege.

Third, Genesis argues that, because there is no material difference between the

rights, powers, and obligations of a debtor-in-possession and those of a trustee in bankruptcy, there is no rational basis for refusing to apply the exclusion to the Trustee where the exclusion would apply to an identical claim brought by the Debtor. The only difference between the two suits would be in the name of the plaintiff, which is a wholly arbitrary basis for deeming the Trustee to be outside the scope of the exclusion.

Fourth, Lloyds argues that, because the Debtor was a sophisticated commercial entity who purchased the insurance coverage at issue with the assistance of a sophisticated broker and of its in-house and outside counsel, and because, in the policy year at issue, the insured-versus-insured exclusion was for the first time modified by endorsement, the parties were of equal bargaining power, and therefore the Court should not apply a presumption against the insurer in construing the policy language.

Fifth, Genesis contends that there is admissible parole evidence of the parties' intent, consisting of evidence as to how the Debtor, through outside counsel, construed the insured-versus-insured exclusion, after the policy period had expired. Specifically, there is evidence that attorney Sabin Willett, while representing certain of the officers and directors and also (purportedly) the Debtor,[18] developed an opinion in the course of such representation that the insured-versus-insured exclusion barred recovery by the Trustee. Genesis contends that extrinsic evidence is admissible to establish the parties' intent, even where the contract language is unambiguous, and that this particular evidence is probative of the construction given to the exclusion's language by the parties.

Sixth, Genesis also contends that the absence of an express exception of the Trustee from the insured-versus-insured exclusion is evidence, or cause in itself to conclude, that the parties intended no such exception.

Seventh, both Insurers dispute the Trustee's contention that the anti-collusion purpose of the exclusion is not implicated here. Lloyds contends that the claims at issue are asserted by an insured against other insureds in an attempt to reach insurance proceeds (but neither Lloyds nor Genesis contends that the *Haney* suit is collusive). Genesis points out that, regardless of its purpose, the exclusion is not limited to collusive claims. Moreover, if the Trustee were not deemed to be subject to the insured-versus-insured exclusion, the threat of collusion would be enhanced because officers and directors would then have incentive to seek appointment of a trustee in order to circumvent the exclusion.

Eighth, both Insurers contest the applicability of the case law that the Trustee invokes on this issue.

Ninth, Lloyds also argues that the Trustee must be an "Insured" under the policy, because if he were not, he would lack standing to bring this action.

Tenth, both parties initially argued that, if the Court finds the exclusion to be ambiguous, the Court should not automatically rule in favor of the Debtor but should afford the parties an opportunity to conduct discovery as to extrinsic evidence of intent. They contend that extrinsic evidence is admissible because the clause is ambiguous, coverage is reasonably disputed, and the insured is a sophisticated pur-

---

**18.** Representation of the Debtor during this time, while the Debtor was still in possession of the estate, would have required that the Court approve his employment as special counsel in accordance with 11 U.S.C. § 327(e). The Debtor never applied to employ Mr. Willett, and the Court never authorized his employment.

chaser of insurance. However, the parties were afforded further time to conduct discovery, and the results thereof are included in their supplemental responses, so this argument is now moot, the discovery having been conducted.

## DISCUSSION

The parties' arguments present two sets of issues: those of contractual interpretation, and those having to do with the rights and powers of the Plaintiff as a chapter 11 trustee.

### a. CONTRACTUAL INTERPRETATION

The first issues presented here are issues of contractual interpretation: (1) whether the word "Company" in the insured-versus-insured exclusion includes within its meaning a chapter 11 trustee of the Company; (2) if not, whether a claim that initially arose in favor of the Company can be deemed "brought by" the Company within the meaning of the exclusion when the claim belongs to the bankruptcy estate and is asserted by the Chapter 11 Trustee; and (3) what presumptions must the Court employ in resolving these issues. These issues turn on principles of state contract law. None of the parties has explicitly addressed the choice of law issue, but the Trustee and both insurers have cast their arguments of contract law in terms of Massachusetts law and clearly treat Massachusetts law as governing. Following this implicit agreement of the parties, the Court concludes that the contractual interpretation of the Primary Policy is governed by the law of the Commonwealth of Massachusetts.

Under Massachusetts law, a court must begin with the actual language of the policy and consider "what an objectively rea-

sonable insured, reading the relevant policy language, would expect to be covered." *Trustees of Tufts Univ. v. Commercial Union Ins. Co.*, 415 Mass. 844, 849, 616 N.E.2d 68, 72 (1993) (quoting *Hazen Paper Co. v. United States Fidelity & Guaranty Co.*, 407 Mass. 689, 700, 555 N.E.2d 576, 583 (1990)). Unless the language is ambiguous, it must be given its plain and ordinary meaning. *GRE Insurance Group v. Metropolitan Boston Housing Partnership, Inc.*, 61 F.3d 79, 81 (1st Cir.1995), citing, as example, *Cody v. Connecticut General Life Ins. Co.*, 387 Mass. 142, 146, 439 N.E.2d 234, 237 (1982). Ambiguity exists when the policy language is susceptible to more than one rational interpretation, but not solely because the parties disagree as to its meaning. *Brazas Sporting Arms v. American Empire Surplus Lines Insurance Company*, 220 F.3d 1, 4–5 (1st Cir.2000) and cases cited. The insurer bears the burden of proving the applicability of any exclusion.[19] *GRE Insurance Group*, 61 F.3d at 81, citing *Camp Dresser & McKee, Inc. v. Home Ins. Co.*, 30 Mass.App.Ct. 318, 321, 568 N.E.2d 631 (1991).

### 1. Presumption against Insurer?

The Trustee argues that, in construing the policy language, ambiguities must be resolved against the insurer that drafted the policy and in favor of the insured. *GRE Insurance Group*, 61 F.3d at 81. "If there are two rational interpretations of policy language, the insured is entitled to the benefit of the one that is more favorable to it." *Hazen Paper Co. v. United States Fidelity & Guaranty Co.*, 407 Mass. 689, 700, 555 N.E.2d 576 (1990). "Exclusions from coverage are to be strictly con-

---

19. The party asserting the existence of coverage bears the initial burden of proving that its claim falls within the grant of coverage, but the present count concerns only the applicability of the exclusion.

strued." *Mt. Airy Ins. Co. v. Greenbaum,* 127 F.3d 15, 18 (1st Cir.1997), quoting from *Sterilite Corp. v. Continental Cas. Co.,* 17 Mass.App.Ct. 316, 321 n. 10, 458 N.E.2d 338 (Mass.App.Ct.1983). They must state clearly what items are to be excluded. *The Stop & Shop Cos., Inc. v. Fed. Ins. Co.,* 136 F.3d 71, 73 (1st Cir. 1998). And "any ambiguity in the somewhat complicated exclusions must be construed against the insurer." *Vappi v. Aetna Cas. & Sur. Co.,* 348 Mass. 427, 431, 204 N.E.2d 273 (1965).

■ The Trustee correctly states the general principles governing the interpretation of insurance policies in Massachusetts law, and the Insurers do not contend otherwise. But the Insurers maintain that the presumption against the insurer does not apply here because the Debtor, in negotiating the Primary and Excess Policies, was a sophisticated commercial entity of equal bargaining power to the Insurers. As evidence of this, they point to two facts: that the Debtor purchased the insurance coverage at issue with the assistance of a sophisticated broker and of its in-house and outside counsel, and that in the policy year at issue, the insured-versus-insured exclusion was for the first time modified by endorsement.

Under Massachusetts law, the doctrine of "contra proferentem," under which ambiguities in insurance contracts are resolved against the insurer as the drafter of the policy, is not applied where the policy language results from bargaining between sophisticated commercial parties of similar bargaining power. *F.D.I.C. v. Insurance Co. of N. Am.,* 105 F.3d 778, 786 (1st Cir.1997); *Falmouth Nat'l Bank v. Ticor Title Ins. Co.,* 920 F.2d 1058, 1062 (1st Cir.1990). In order to establish that this exception applies, the Insurers must show not only that the party procuring the insurance coverage, MMT, was a sophisticated commercial entity and equal in bargaining power to the Insurers, but also that the specific language at issue was a result of bargaining between the Insurer and MMT. On the latter point, the Insurers have adduced no evidence. They have adduced evidence only that MMT procured its insurance coverage with the help of a team of some sophistication, that the insured-versus-insured exclusion was modified by endorsement, and that outside counsel (Mr. Willett) opined, after the policy period had expired, that the exclusion barred coverage for claims by the Trustee. But it is also undisputed that the endorsement did not modify the crucial exclusion language,[20] and there is no evidence whatsoever that this particular language was the subject of any discussion whatsoever, much less negotiation, between the Insurers and MMT. In short, on the uncontroverted facts, the crucial policy language did not "*result*[ ] *from the bargaining between* sophisticated commercial parties of similar bargaining power." *F.D.I.C. v. Insurance Co. of N. Am.,* 105 F.3d at 786 (emphasis added). Therefore, as a matter of law, the exception does not apply and, where policy language is ambiguous, the Trustee is entitled to the benefit of the presumption against the insurer.

### 2. *The Language of the Exclusion*

■ The Court now turns to the language of the insured-versus-insured exclusion. In relevant part, it states:

The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured:

**20.** The language at issue is the initial clause of exclusion (i): "The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured ... which is brought by any Insured or by the Company."

(i) which is brought by any Insured or by the Company; or which are [sic] brought by any security holder of the Company, whether directly or derivatively, unless such Claim(s) is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Insured or the Company.

If the Trustee comes within the scope of this exclusion, it is because he is, or stands in the shoes of, "the Company." For purposes of certain types of claims, "Insured" is defined to mean the Company. The Defendants agree that the Trustee cannot come within the Policy's definition of Insured except insofar as he is the Company. So the Court need only determine whether the Trustee is the Company or is otherwise bound by the exclusion of the Company. By virtue of definitions in the Primary Policy, "Company" means MMT and its subsidiaries.

### 3. Does "Company" include the Trustee?

The first issue presented is whether the term "Company," as used in the Policy, includes a trustee in bankruptcy of the Debtor Company or, more generally, the Company's successors or assigns. Unambiguously, it does not. "Company" is expressly defined to mean MMT and its subsidiaries. The definition includes no reference to successors or assigns of any nature. Moreover, if "Company" were intended to include other entities enforcing causes of action that originally arose in favor of the Company, it would not have been necessary, later in the insured-versus-insured exclusion, to specify that the exclusion encompasses (albeit with exception) security holders' derivative claims. Derivative claims belong to a corporation and are brought by its shareholders on the corporation's behalf. Under the In-

surers' proposed interpretation, this reference to claims brought derivatively would be duplicative and unnecessary; contracts should be interpreted to avoid such results. *Bank v. International Business Machines Corp.*, 145 F.3d 420, 429 (under Massachusetts law, "a contract should be interpreted as a whole, so that each of its provisions has operative effect."). Moreover, in view of the fact that the insured-versus-insured exclusion expressly excludes (albeit with exception) one entity bringing claims that arose in favor of the Debtor (*i.e.*, security holders bringing derivative claims), the lack of express reference to others is indication that no broader exclusion was intended. Therefore, I conclude, as a matter of law, that "Company" is unambiguous and does not include the Trustee.

Moreover, if the term were deemed ambiguous, the result would be the same. "Company" can rationally be interpreted to include only MMT and its subsidiaries—indeed it is far more plausible than the Insurers' alternative—and the presumption against the insurer entitles the insured to the benefit of this interpretation.

### 4. What is the scope of "brought by"?

The other crucial language in the exclusion is the phrase "brought by." The exclusion applies to any *"Claim* made against an Insured *which is brought by* any Insured or by the Company." (Exclusion (i), emphasis added.) The Trustee maintains that "brought by" unambiguously focuses on the identity of the party asserting the claim, not on the nature of the claim being brought; if the Trustee is bringing the claim, the claim is not excluded, regardless of whether he brings it as a successor in interest to the Debtor, in whose favor the claim originated. The Insurers, by citation to cases that have come to different conclusions than the one proposed by the

Trustee (albeit on different facts), urge the Court to read "brought by" more broadly, such that a claim would be deemed "brought by" the Debtor if the Trustee brought it either on behalf of or as a successor in interest to the Debtor.

Again, the issue presented is one of contractual interpretation. The Court must determine whether "brought by" is broad enough to encompass the circumstances presented here. What precisely is the Trustee's relation to the claims at issue? The claims originated in favor of the Debtor Company by virtue of the officers' and directors' alleged breaches of duties they owed to the Company, and they belonged to the Company as of the date of its bankruptcy filing. Upon the Debtor's filing of its bankruptcy petition, however, the claims became the property of a new entity, the bankruptcy estate. 11 U.S.C. § 541(a)(1) (the commencement of a case creates an estate comprised of, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case"). The claims now belong to the estate, not to the Company, and the Chapter 11 Trustee brings them on behalf of the estate, not on behalf of the Company. Therefore, in order to encompass the Trustee's claims, it would not be enough for "claim brought by" to include "claim belonging to" or "claim brought on behalf of." Neither applies here. In order to encompass the Trustee's claims, "claim brought by" would have to include "claim that originated in favor of but that no longer belongs to and that is brought neither by nor on behalf of."

No objectively reasonable insured could construe "claim brought by" to have that reach. By its plain and unambiguous meaning, the focus of the phrase is on who is bringing the claim, not who it initially belonged to. The language cannot rationally be construed to encompass the rela-tion of the Trustee to the claims at issue here. Therefore, even without considering any presumption against the insurer, "brought by" must, as a matter of law, be construed *not* to extend to the present facts. *American Casualty Co. v. Sentry Federal Savings Bank*, 867 F.Supp. 50, 59 (D.Mass.1994) (where policy excluded claim "made by" an insured against another insured, "[i]t does not matter what type of claim is brought, but who asserts the claim"). Moreover, even if "brought by" were broad enough to include not only the entity bringing the claim but also the entity on whose behalf it is being brought, it would not here reach MMT. The claims belong to the estate and are being brought on the estate's behalf; the Debtor is no longer the real party in interest. The Trustee is.

If "brought by" were deemed ambiguous, the result would be the same. "Brought by" can rationally be interpreted to exclude the circumstances presented here. Given the existence of a rational interpretation that favors the insured, the presumption against the insurer entitles the insured to the benefit of that interpretation.

## 5. *Parole Evidence*

Genesis argues that certain extrinsic evidence should be admitted to establish the parties' intent: specifically, the evidence that attorney Sabin Willett, who assisted the Debtor in the negotiation of the policies at issue, later opined that the insured-versus-insured exclusion barred recovery by the Trustee. Genesis contends that Willett's opinion is the understanding of MMT and, as such, is probative of the parties' intent.

The Court rejects this argument for two reasons. First, extrinsic evidence is not admissible to establish the parties' intent where, as here, the contract language is

not ambiguous and the purpose of the extrinsic evidence is to broaden an exclusion well beyond the scope of its plain meaning. The parol evidence rule bars the introduction of prior or contemporaneous written or oral agreements that contradict, vary, or broaden an integrated writing.[21] The language at issue is not uncertain or equivocal about coverage of the claims at issue.

And second, the evidence in question is not probative of the parties' intent at the time that they agreed on the insurance coverage at issue. Even if Sabin Willett somehow assisted MMT in procuring the insurance coverage, and even if he was representing MMT when he formulated his opinion about the coverage, there is no evidence that MMT, through Willett or any of its employees or agents, discussed or negotiated the language at issue with the Insurers, much less that Mr. Willett was privy to such discussion. Genesis has cited no evidence that Willett's opinion was based on knowledge gained in or from the negotiation of the Policies. This evidence elucidates neither the shared understanding of the parties at the time their agreement was entered into nor even the understanding of MMT at that time. For these reasons, the Court concludes that extrinsic evidence is not admissible and, in any

event, would not aid in understanding the contract language.

### 6. Inferences from Silence

Genesis also contends that the absence of an express exception of the Trustee from the insured-versus-insured exclusion is evidence, or cause in itself to conclude, that the parties intended no such exception. The Court disagrees. The parties would need an express exception only if the language of the exclusion gave them cause to believe that successors in interest to the company were subject to the exclusion. But, as I concluded above, the plain meaning of the operative language in the exclusion gives no cause to believe that claims by a chapter 11 trustee would be excluded. No exception was necessary, so silence gives rise to no inference. Moreover, there is not even evidence that, in drafting and negotiating the policy, the Insurers and MMT were concerned to clarify whether the exclusion would apply to a successor in interest of the Company.

The Trustee, too, makes an argument from silence: that, in view of the numerous decisions against National Union in the 1980s in which courts held that an insured-versus-insured exclusion did not bind a trustee in bankruptcy (or other successor

**21.** *Kobayashi v. Orion Ventures, Inc.*, 42 Mass. App.Ct. 492, 496, 678 N.E.2d 180 (1997), citing *Gifford v. Gifford*, 354 Mass. 247, 249, 236 N.E.2d 892 (1968), *Hogan v. Riemer*, 35 Mass.App.Ct. 360, 364–365, 619 N.E.2d 984 (1993), and Restatement (Second) of Contracts § 215 (1981). See also *Boston Car Co., Inc. v. Acura Automobile Div., American Honda Motor Co.*, 971 F.2d 811, 815 (1st Cir. 1992):

"Under Massachusetts law, parol evidence may not be admitted to contradict the clear terms of an agreement, or to create ambiguity where none otherwise exists." *ITT Corp. [v. LTX Corp.]*, 926 F.2d [1258 (1st Cir.1991)] at 1261. However, we have recognized that: in order to utilize extrinsic

evidence of the parties' intent, a court need not invariably find facial ambiguity. The Massachusetts courts have said:

When the written agreement, as applied to the subject matter, is in any respects uncertain or equivocal in meaning, all the circumstances of the parties leading to its execution may be shown for the purpose of elucidating, but not of contradicting or changing its terms. *Keating v. Stadium Mgmt. Corp.*, 24 Mass.App.Ct. 246, 508 N.E.2d 121, 123, review denied, 400 Mass. 1104, 511 N.E.2d 620 (1987).

*ITT Corp.*, 926 F.2d at 1264. Thus, the threshold question is whether the term at issue is ambiguous, or at least uncertain or equivocal.

to the company), National Union would expressly have mentioned trustees in bankruptcy in the exclusion if it had intended to exclude their claims from coverage. The Court rejects this argument. The language of the agreement unambiguously supports the Trustee's proposed interpretation, so this appeal to extrinsic evidence—the record of adverse decisions—is neither justified nor necessary. Moreover, the Trustee has not sufficiently developed the extrinsic evidence to determine what inference might be drawn from it.

### 7. *Purpose of Exclusion*

The Trustee argues that insured-versus-insured exclusions should not be construed to extend to trustees in bankruptcy because the purpose of such exclusions is to protect insurers from collusive suits, of which there is no danger when claims are brought by a bankruptcy trustee. Both insurers respond that the anti-collusive purpose *is* implicated, first (according to Lloyds) because the Trustee is an insured bringing suit against other insureds,[22] and second (according to Genesis) because, unless the claims of trustees in bankruptcy are deemed excluded, officers and directors will have incentive to seek appointment of a trustee in order to circumvent the exclusion.

In construing the language of the contract, the Court places no reliance on the purpose of the exclusion. The purpose of an insured-versus-insured exclusion is to avoid potentially collusive claims. *Sentry Federal*, 867 F.Supp. at 59 ("Most courts agree . . . that '[t]he obvious intent behind the "insured v. insured" exclusion is to protect [the insurer] from collusive suits among [the company] and its directors and officers.' "). And this Court agrees with

Judge Young's observation in *Sentry Federal* that concerns for collusion and other mischief are generally not implicated where the successor in interest is a third party, such as the Resolution Trust Corporation or a trustee in bankruptcy, who is not in collusion with the officers and directors. *Id.* at 60. But knowing the general purpose does not tell us precisely how the parties intended to accomplish it. The best guide to the latter is the language of the Policy, and here that language is unambiguous.

### 8. *Conclusion as to Contractual Interpretation*

For the reasons set forth above, the Court concludes that, as used in the insured-versus-insured exclusion in the Primary Policy, "the Company" is MMT and does not include its chapter 11 trustee, and the term "brought by" is not broad enough to encompass the circumstances presented here.

### b. *TRUSTEE'S POWERS AND RIGHTS*

### 1. *Is the Trustee, by virtue of his rights and powers, virtually the same entity as the Company?*

The Insurers next argue that even if Company doesn't include a chapter 11 trustee, the Trustee comes within the scope of the exclusion because, by virtue of certain legal rights and powers he enjoys, he is the legal equivalent of the Company and virtually becomes the Company for purposes of this claim. The Court rejects this argument. As I explained in the preceding paragraph, "Company" means MMT and does not include others who may exercise rights of MMT but are not themselves MMT.[23]

---

**22.** The Court disagrees: MMT is an insured; the Trustee is not.

**23.** Genesis argues that, given the legal equivalence between the Trustee and the Debtor in

Moreover, the Chapter 11 Trustee is not the legal equivalent of the Debtor. The Insurers would establish this equivalence by pointing to three factors: that a chapter 11 trustee exercises the same rights and powers as would a debtor-in-possession under Chapter 11 and therefore is virtually interchangeable with the debtor; that the Trustee is prosecuting the Company's causes of action; and that, in prosecuting those causes of action, he "stands in the Company's shoes" and is subject to such defenses could have asserted against the Debtor brought the action. With respect to each factor, the Insurers either misstate the law or gloss over significant features.

First, although it is true that a chapter 11 trustee exercises almost the same rights as a debtor-in-possession, it also true that the trustee and the debtor cannot exercise the same rights at the same time. The appointment of a chapter 11 trustee removes the debtor from possession of the estate's assets. The debtor, however, does not then cease to exist. The two entities exist side-by-side, having different powers and rights and, as importantly, being separate and distinct entities and therefore having different interests. The Trustee, for example, is not answerable to MMT's stockholders and not governed by MMT's officers and directors. See *Rieser v. Baudendistel (In re Buckeye Countrymark, Inc.)*, 251 B.R. 835, 840 (Bankr.S.D.Ohio 2000) (a bankruptcy trustee is not the debtor's alter ego but a separate legal entity that neither represents the Debtor nor owes the Debtor a fiduciary obligation and whose responsibility is to the bankruptcy estate). Moreover, even if the Trustee could be deemed the same entity as other entities to which it was equivalent, the Insurers would have to establish his equivalence not to MMT as a debtor-in-possession but to MMT generally (because the exclusion applies to "the Company"). Debtor-in-possession status does not define or exhaust the essence of MMT.

Second, it is true that the Trustee, in prosecuting the claims at issue, is prosecuting causes of action that originally arose in favor of the Debtor, but not that those claims belong to the Debtor or that he is prosecuting them on the Debtor's behalf. Upon the Debtor's bankruptcy filing, the claims at issue became assets of the bankruptcy estate, see 11 U.S.C. § 541(a), which is a separate entity from the Debtor. The Trustee is prosecuting those claims on behalf of the estate and for the benefit of those having valid claims against it, among whom the Debtor stands last in priority.[24]

Third, while it is certainly true that a trustee "stands in the shoes of the debtor" when prosecuting causes of action that arose in favor of the debtor before the commencement of the bankruptcy case, it also true that this doctrine does not mean that the trustee *is* the debtor. It only means that the trustee, despite his or her nonidentity with the debtor, is nonetheless

Possession, the only difference between the Trustee's bringing this claim and the Debtor–in–Possession's bringing this claim would be in the name of the plaintiff, and this is a wholly arbitrary basis for deeming the Trustee to be outside the scope of the exclusion. The Court disagrees. If the purpose of the insured-versus-insured exclusion is to avoid collusive claims (as it appears to be), the difference between trustee and debtor is a perfectly reasonable basis for treating the two different-

ly. Moreover, the Policy itself defines the scope of the exclusion according to the identity of the party bringing the claim, and, in an action based on an insurance policy, the policy governs.

24. No one contends that there is any realistic prospect in this case of the Debtor's receiving a distribution in this case.

subject to such defenses as the defendant has against the debtor.

For these reasons, the conclusion is inescapable that the Chapter 11 Trustee and MMT are distinct entities, neither identical nor even equivalent, and therefore that the Trustee's rights and powers do not make him "the Company" for purposes of these claims.

### 2. *Is the Trustee subject to the exclusion because the Debtor would be?*

■ The Insurers next contend that, even if the Trustee is not the Company within the meaning of the policy, his claims are nonetheless subject to the exclusion because, in asserting the claims at issue, he stands in the shoes of the Debtor and therefore is subject to any defense that the Insurers could assert against the Debtor if the Debtor were asserting these claims. In support of this argument, the Insurers rely on the First Circuit case of *In re Rare Coin Galleries of America,* 862 F.2d 896 (1st Cir.1988), for the proposition that "[t]he trustee steps into the shoes of the debtor for the purposes of asserting or maintaining the debtor's causes of actions, which become property of the estate." *Id.* at 901. This argument fails for two reasons.

### A. *No direct claim by Trustee, standing in Debtor's shoes, against Insurers*

It fails first because it is based on the false premise that the Trustee, standing in the shoes of the Debtor, is asserting a claim against the Insurers. This premise improperly conflates two distinct sets of claims. The first set, the primary claims, consists of the claims asserted by the Trustee against the officers and directors. The second set consists of the claims for coverage that the officers and directors have, as insureds under the policies at issue, against the Insurers with respect to the primary claims. So we have primary claims and coverage claims.

With respect to the primary claims, the Trustee is the plaintiff, prosecuting causes of action that arose in favor of the Debtor and against the officers and directors. In doing so, he does indeed step into the shoes of the Debtor. But the Insurers are not the defendants in those causes of action, and the actions are not based on the insurance policies at issue; therefore, the insured-versus-insured exclusion is simply irrelevant to the primary claims.

The coverage claims, on the other hand, *are* based on the policies, but they arise from rights belonging *to the officers and directors as insureds* under those policies. It is *their* rights to coverage, not the Debtor's, as to which the Trustee is seeking a declaration in this adversary proceeding.[25] With respect to the coverage claims, the Trustee steps into the shoes of the insured officers and directors, not of the Debtor; and so, again, there is no question of interposing against the Trustee a defense that

**25.** The Massachusetts courts recognize the right of a party asserting claims against an insured to proceed directly against the insurer for a determination that its claims are within the scope of the insured's coverage. See *Tenovsky v. Alliance Syndicate, Inc.,* 424 Mass. 678, 677 N.E.2d 1144 (1997). The injured party is a necessary party in declaratory judgment litigation regarding coverage. *National Union Fire Ins. Co. of Pittsburgh v. Massachusetts Mun. Wholesale Elec. Co.,* 117 F.R.D. 321, 322 (D.Mass.1987) (a party asserting a potentially covered claim against an insured is a necessary party to an action by the insurer against the insured for a declaration that coverage does not exist). Therefore, Lloyds argument about the Trustee's standing—that the Trustee must be an "Insured" under the policy, because if he were not, he would lack standing to bring this action—is founded on a false legal premise.

the insurer has against the Debtor. The Debtor is not a party to the coverage claims.

## B. *The Exclusion is Not Triggered*

But even if the Trustee, standing in the shoes of the Debtor, were in some valid sense asserting a direct claim against the Insurers for coverage, this argument would fail for a second reason: that the insured-versus-insured exclusion is triggered only when the Debtor brings a claim, and here that has not happened. The exclusion is based not on the nature of the underlying claim but on the identity of the person bringing it. The exclusion would apply if the Debtor were bringing the claim, but the Debtor is not bringing the claim

Genesis replies that a trustee standing in the shoes of the debtor is subject to any defense that the debtor would face if the debtor were bringing the claim. What Genesis means here is that the Trustee is subject not only to such defenses as the Insurers actually have against the Debtor, but also to such additional defenses as the Insurer would have if the Debtor were bringing the claim: that is, in a hypothetical, not actual, state of affairs (because in fact the Debtor is not bringing this claim). The Court rejects this argument. A trustee prosecuting a claim of the debtor is subject to such defenses as the debtor would have been subject to had the debtor itself brought the claim. The use of the subjunctive in this doctrine is intended to mean that the trustee has no better rights than the debtor and is subject to the same defenses as the defendant actually has against the debtor; in other words, the substitution of the trustee for the debtor as the party plaintiff results in no improvement in position for the plaintiff. It was not intended to improve the position of the defendant by giving it the benefit of additional defenses based on hypothetical facts. The insured-versus-insured exclusion applies only when the Debtor brings the claim. The Debtor has not brought this claim and therefore has not triggered the exclusion.[26] Even standing in the shoes of the debtor, a trustee is not subject to defenses whose application the debtor has not triggered.[27]

## c. *THE OTHER CLAIMS*

In all of the foregoing discussion, the Court has addressed arguments in which both parties argued as if all the claims at issue (1) originated in favor of the Debtor and (2) arose prepetition. Most of the claims at issue fit that description. They are claims that belong to the estate because they belonged to the Debtor as of the commencement of the case. 11 U.S.C. § 541(a)(1). However, the complaint also includes one count for breach of fiduciary duty to the estate that accrued postpeti-

---

26. Genesis suggests that this conclusion is tantamount to nullifying or overriding the insured-versus-insured exclusion, but that is not the case. The exclusion does not apply here because its own express condition (that the claim be brought by the Company) has not been satisfied, not because the exclusion has been nullified.

27. This conclusion renders moot Genesis's argument that the Trustee is estopped from denying that, in asserting his claims against the officers and directors, he stands in the Debtor's shoes. Even standing in the Debtor's shoes, the Trustee is not subject to the insured-versus-insured exclusion. Moreover, the statement of law that Genesis would estop the Trustee from denying is that "the Trustee, as the current management of MMT, stands in MMT's shoes *in nearly every respect.*" (Emphasis added.) In this statement, the Trustee contemplated that, in some respects, he did not stand in the Trustee's shoes, and the statement is silent as to which circumstances might constitute exceptions. The statement does not advance Genesis's argument.

tion, while the Debtor remained a debtor-in-possession (the "estate claims"). (It is not clear whether the estate claims accrued during the coverage period of the policies at issue.) And the complaint also asserts prepetition rights of recovery for breach of a fiduciary duty owed by the officers and directors *to the creditors* (the "creditor claims") Though the parties have not focused on these "other claims," the Trustee is nonetheless seeking a declaration of non-exclusion as to *all* the claims he is asserting against the officers and directors.

With respect to both the creditor claims and the estate claims, the reasons for concluding that they are not within the scope of the insured-versus-insured exclusion are even stronger than with respect to the prepetition claims that arose in favor of the Debtor. The claims for breach of duty to the creditors arose, by definition, in favor of the creditors. They were never the Debtor's. Likewise, the postpetition claim for breach of duty to the estate has, from its inception, always belonged to the estate, never to the Debtor (though the Debtor was in possession of the estate when the claims accrued). 11 U.S.C. § 541(a)(7) (the estate is comprised of, among other things, "any interest in property that the estate acquires after the commencement of the case"). Because neither the creditor claims nor the estate claims originated in favor of the Debtor, the Trustee does not stand in the Debtor's shoes in bringing them. Therefore, those of the Insurers' arguments that were predicated on the Trustee's standing in the Debtor's shoes have no application to the creditor and estate claims.

## CONCLUSION

For the reasons set forth above, the Court concludes that there are no genuine issues of material fact and that, on the uncontroverted facts, the Trustee is entitled, as a matter of law, to a declaration that the Second and Third Excess Insurers may not decline to provide coverage for the Trustee's claims against MMT's officers and directors on the basis of the insured-versus-insured exclusion. Pursuant to 28 U.S.C. § 157(c)(1) and F.R.Bankr.P. 9033(a), the Court hereby enters and submits this conclusion of law, together with the above rulings on which it is predicated, to the United States District Court as proposed conclusions of law.